**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | | |
|---|---|---|
| LAUREN BANTLEON, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 09-2888 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

---

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Lauren Bantleon ("Bantleon") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is not supported by substantial evidence and should be **REVERSED**, awarding benefits to the claimant.

**I.   PROCEDURAL HISTORY**

Ms. Bantleon (the "claimant") filed an application for Disability Insurance Benefits pursuant to sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act on April 23, 2004, claiming disability due to phobias, anxiety, depression, and delusions since March 2, 2004. (Tr.

95.)[1]  Plaintiff's application was denied at the initial and reconsideration levels of appeal.  (Tr. 32-37; 41-44.)  A hearing was held on November 2, 2006 before an Administrative Law Judge in Newark, NJ.[2]  (Tr. 11.)  Administrative Law Judge Dennis O'Leary (the "ALJ") issued a decision on July 19, 2007 finding the plaintiff  "not disabled," based on a determination that she could perform her past relevant work as a cashier and a receptionist.  (Tr. 11; 243-49.)  The Appeals Council granted the claimant's request for review on February 7, 2008.[3]  (Tr. 250-53.)  It reversed the ALJ's decision, finding that the ALJ did not adequately "reflect functional consequences of the claimant's impaired social functioning."  (Tr. 251.)  Further, the ALJ did not "identify the social and mental demands of claimant's prior jobs or compare them with the claimant's residual functional capacity."  (Id.)  The ALJ was instructed to further clarify the nature and severity of the claimant's impairments and subjective complaints, obtain a medical expert if necessary, evaluate the claimant's subjective complaints, provide further rationale, give greater consideration to the claimant's RFC, and obtain evidence from a vocational expert.  (Id.)  Pursuant to the Appeals Council's instructions, a hearing was held before ALJ O'Leary on April 24, 2008 in Newark, NJ.  (Tr. 12.)  On July 17, 2008, ALJ O'Leary issued a decision, finding that Plaintiff was not disabled, within the meaning of the Act.  (Tr. 11-29.)  The following is a summary of his findings:

> 1.   The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

---

[1]  The Social Security Act instructs the Secretary to file, as part of her answer, a certified copy of the transcript of the record, including any evidence used to formulate her conclusion or decision. 42 U.S.C. § 405 (g). "Tr." Refers to said transcript.

[2]  Plaintiff requested a hearing (Tr. 240-41) pursuant to Heckler v. Day which states that: if the claimant "receives an adverse determination, he is entitled to an evidentiary hearing and de novo review by an administrative law judge." 467 U.S. 104, 106 (1984).

[3]  Claimant requested review on August 17, 2007.  (Tr. 254.)

2.    The claimant has not engaged in substantial gainful activity since April 23, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: recurrent major depression; anxiety; panic attacks; agoraphobia; post-traumatic stress disorder; personality disorder, NOS; and a history of substance abuse, not material (20 CFR 404.1520(c) and 416.920(c)).  The claimant's asthma and neck and back problems have no more than a minimal effect on her ability to perform basic work activities and are therefore "non-severe."

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, and can therefore perform heavy work as defined in section 204.00 of appendix 2, subpart P, Regulations No. 4.  The claimant has recurrent major depression; anxiety; panic attacks; agoraphobia; post-traumatic stress disorder; personality disorder; NOS; and a history of substance abuse, not material, with moderate restriction of the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of deterioration.  None of the "C criteria" are met.  The claimant must avoid working with the public and is limited to minimal contact with co-workers and supervisors.  She is also limited to performing simple, repetitive tasks. The claimant's residual functional capacity for heavy work is not significantly compromised by her additional nonexertional limitations, as per vocational expert testimony (See also SSR 85-15).

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on April 8, 1980 and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1563 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560 (c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability as defined in the Social Security Act, from April 23, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23-29.)  Based on these findings, the ALJ concluded that Plaintiff was not eligible for SSI or DIB benefits under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act.  (Tr. 29.)  The Appeals Council denied review of the decision on April 13, 2009 (Tr. 3-5.), after considering additional information.  (Tr. 6.)  Plaintiff filed the instant action in a timely manner, seeking reversal of the Commissioner's decision.

## II.  STATEMENT OF THE FACTS

### A.  Background

Plaintiff, Lauren Bantleon, was born on April 8, 1980.  (Tr. 28.)  She filed for, and was granted, Disability Insurance Benefits and SSI benefits in 1998 based on depression.  (Tr. 14.) She attended high school in a self-contained special education program for emotionally disturbed students.  (Tr. 233.)  Bantleon dropped out of high school at age 17 due to agoraphobia and psychotic episodes that made her not want to leave her room.  (Id.)  Her disability benefits eventually ceased because of her testimony that she was feeling better and did not need benefits anymore.  (Id.)  She filed again for disability on April 23, 2004.  (Tr. 80-82.)  Plaintiff is divorced and has a son, born in 2001.  (Tr. 14.)  She currently lives with her grandmother.  (Tr. 21.)  Plaintiff has held many jobs, such as cashier, clerk, receptionist, waitress, and telemarketer. (Tr. 16.)

### B. __Claimed Disabilities__

Plaintiff stopped working on March 2, 2004, (Tr. 80.) allegedly because of depression, anxiety, and agoraphobia.  (Tr. 14.)  She has had two suicide attempts, overdosing on her prescribed medication.  (Tr. 15.)  One of these suicide attempts occurred on March 6, 2005; it is unclear when the other took place.  (Tr. 19.)  She testified that she does not go out of the house, except to pick up her son from school or to attend doctor appointments.  (Tr. 21.)  The claimant testified to having psychotic episodes, stating that if she looks in the mirror, she sees the devil looking back.  (Tr. 14.)  She is agoraphobic, gets nervous around others, and has problems being outside.  (Tr. 15.)  She testified that if she takes public transportation, she feels like she can't breathe, gets nauseous, and feels like the world is spinning.  (Tr. 14.)  Plaintiff testified, "[I] have recurrent episodes of severe depression where [I] have no energy, concentration, motivation.  [I] have anxie[t]y attacks.  [I] sometimes can't get out of bed for a long period of time, up to a few weeks."  (Tr. 95-96.)  The record further indicates that plaintiff is on many medications, including muscle relaxers for arthritis, Klonopin for agoraphobia, anxiety and panic attacks, Cymbalta for depression and post traumatic stress disorder, Envega for psychosis and borderline personality disorder, and Ativan for insomnia.  (Tr. 15-16.)  She also claims problems with concentration, attention, and short-term memory.  (Tr. 15.)  The claimant suffers from arthritis and uses a cane as a result.  (Tr. 16.)  Plaintiff indicated that, when people touch her back, it is painful.  (Id.)  The record also indicates that the claimant has asthma and smokes half of a pack of cigarettes each day.  (Id.)  Prior to 2002, she experimented with heroin.  (Tr. 15.)  She receives drug testing at New Brunswick Counseling Center and goes there for counseling when she is depressed.  (Tr. 16.)

### C. **Psychological Evaluations**

On December 13, 1993, plaintiff was evaluated at the Catholic Charities Program in East Brunswick, NJ. (Tr. 151.) The report indicates that the claimant was thirteen years and eight months old, suffering from suicide attempts, self-cutting, eating disorders, self-image doubts, and homicidal ideation about her adoptive stepfather. (Tr. 152-53.) The claimant was well-groomed, alert, and had relevant and coherent speech. (Tr. 155.) She was diagnosed with dysthmia, oppositional defiant disorder, and borderline personality disorder. (Tr. 156.) She was further diagnosed with a GAF of 55, and it was recommended that she receive medicine for depression, which she refused. (Id.)

A disability interviewer observed that claimant had some difficulty remembering on April 23, 2004. (Tr. 103.) Progress reports from JFK Family Center from March 2, 2001 to October 27, 2004 indicate diagnoses of depression, panic attacks, and agoraphobia. (Tr. 175.) Plaintiff also suffered from post partum depression and posttraumatic stress syndrome. (Tr. 183.) On March 6, 2005 the claimant took an overdose of 100 Klonopin and was admitted to Raritan Bay Hospital. (Tr. 213.) She was released on March 9, 2005, as she was not willing to maintain inpatient treatment. (Id.) She was diagnosed with opiate abuse dependency, major recurrent depression, posttraumatic stress disorder, and a GAF of 25. (Tr. 216.)

Dr. Baharlias was retained by the Commissioner and performed a consultative medical examination on May 29, 2007. (Tr. 233.) The claimant reported seeing Dr. Dubois, a psychiatrist, every three months for medication. (Tr. 234.) She reported to Dr. Baharlias that Dr. Dubois has diagnosed her with generalized anxiety disorder, agoraphobia, post-traumatic stress disorder, major depression with psychotic tendencies, and panic disorder, and prescribed Zoloft.

6

(Id.)  The claimant noted that she also sees a primary care physician who has prescribed her Seroquel, Klonopin and Lipitor.  (Id.)  The claimant reported that she dates occasionally, does not shop, and has her meals prepared by her aunt.  (Id.)  Plaintiff reported that she had to take two and a half Klonopin in order to come to the examination.  (Id.)

Dr. Baharlias indicated that plaintiff had no significant cognitive problems.  (Tr. 235.) Dr. Baharlias gave these diagnoses: a history of being molested at age four; a history of childhood verbal abuse by the claimant's mother; a history of polysubstance abuse in sustained remission for two years; agoraphobia, moderate to severe; post traumatic stress disorder, unresolved relative to sexual assault; major depressive disorder, recurrent without psychotic features at this time, rule out possible episodic psychotic features; alternatively mood disorder, NOS, currently depressed; with a history of postpartum psychosis.  (Id.)  The claimant was also diagnosed with personality disorder NOS, with borderline features.  (Id.)

Dr. Baharlias also noted that the claimant had no limitation in understanding, remembering, and carrying out simple instructions; mild limitation in the ability to make judgments on simple work-related decisions; mild to moderate limitation in the ability understand and remember complex instructions; moderate limitation in the ability to carry out complex instructions; and moderate limitation in the ability to make complex work-related decisions.  (Tr. 237.)  The claimant had mild to moderate limitation in her ability to interact appropriately with supervisors and the public and mild limitation in her ability to interact appropriately with co-workers.  She had a moderate to marked impairment to respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 238.)  Dr. Baharlias further noted that the "claimant may experience episodic psychotic moments with

auditory or visual hallucinations under stress with flashbacks." (Id.)

### D. Medical Records and Evaluations

Dr. Siddiqui from the Innovative Pain Care Center has been seeing the claimant since November 6, 2007. (Tr. 22.) The claimant reported low back and neck pain after an assault in 1994. (Id.) X-rays of her lumbar spine showed lumba levioscoliosis, and narrowed lumbosacral disc space. (Tr. 277.) Claimant stated that walking and bending over was painful and she has difficulty sleeping because of pain. (Id.) She had decreased extension of the cervical spine with tenderness at the end of range of motion, trigger points in the bilateral upper trapezius muscles, and spasms in the bilateral lower paracervicals. (Tr. 279.) She was diagnosed with thoracic or lumbosacral neuritis or radiculitis unspecified; cervicaglia; myalgia and myositis unspecified; and difficulty in walking. (Id.) Dr. Siddiqui recommended that claimant participate in a skilled physical therapy program and trigger point injections, and receive MRI's of the cervical and lumbar spines. (Id.)

On March 5, 2008 Dr. Siddiqui noted that a cervical MRI showed disc degeneration at C3 and C4, and a lumbar MRI showed facet joint disease at L5-S1. (Tr. 281.) There were no disc herniations. (Id.) She was diagnosed with cervicalgia, difficulty in walking, myalgia/myositis, and thoracic/lumbar neuritis/radiculitis. (Id.) Physical therapy and trigger point injections were recommended. The claimant was prescribed Biaxin and oxycodone and was advised about the addictive nature of narcotic medication. (Tr. 283.)

# III.  DISCUSSION

## A.    <u>Standard of Review</u>

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §
405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial
evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>Stunkard v. Sec'y of Health and Human Services</u>,
841 F.2d 57, 59 (3d Cir. 1988); <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial
evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a
conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co.
v. NLRB</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of
evidence but may be less than a preponderance."  <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357,
360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then
determine whether there is substantial evidence to support the Commissioner's decision.  <u>See</u>
<u>Taybron v. Harris</u>, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder."  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir.
1992), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Williams</u> <u>v. Shalala</u>, 507 U.S. 924 (1993) (citing <u>Early v. Heckler</u>,
743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial
evidence, this Court is bound by those findings, "even if [it] would have decided the factual
inquiry differently."  <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 35 (3d Cir. 2001); <u>see</u> <u>also</u> <u>Hartranft v.
Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's
decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.**     **Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that his or her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted

10

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

**C.     The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[4] 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

---

[4] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[5] apply and give reasons why those listings are not met or equaled.  In <u>Jones v. Barnhart</u>, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (<u>Id.</u>)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing."  <u>Scatorchia v. Comm'r of Soc. Sec.</u>, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In <u>Burnett</u>, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

<u>Burnett</u>, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

---

[5] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix

demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the burden of establishing the existence of jobs in the national economy.  These guidelines dictate a result of "disabled" or "not disabled" according to combinations of factors (age, education level, work history, and residual functional capacity).  These guidelines reflect the administrative notice taken of the numbers of jobs in the national economy that exist for different combinations of these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.

1.

13

However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

     D.    The ALJ's decision

In brief, the issue before the ALJ was whether Plaintiff was disabled under the Social Security Act subsequent to the alleged date of onset.  The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had recurrent major depression, anxiety, panic attacks, agoraphobia, post-traumatic stress disorder, personality disorder NOS, and a history of substance abuse (not material), which were "severe" impairments within the meaning of the Regulations; 3) at step three, Plaintiff's impairments, singly or in combination, did not meet or equal an impairment in the Listings; 4) at step four, Plaintiff retained the residual functional capacity to perform heavy work, limited to minimal contact with co-workers and supervisors as well as limited to performing simple repetitive tasks, which rendered her unable to perform her past relevant work; and 5) at step five, given the claimant's age, educational level, work history, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 23-28.)  The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, during the relevant time period.  (Tr. 29.)

14

E.      Plaintiff's Appeal

Plaintiff argues on appeal that substantial evidence exists in the administrative record to support a finding of disability and requests that this court reverse the decision of the Commissioner or remand these claims to the Commissioner for further consideration.  (Pl.'s Br. 1.)  Plaintiff contends that the ALJ made both procedural and substantive errors.  (Pl.'s Br. 14.) Plaintiff alleges that the ALJ erred at step two in finding that plaintiff had no exertional impairments, even though she has multi-level disc disease and arthritic joints.  (Pl.'s Br. 15.)  At step three, plaintiff contends that the ALJ did not combine all of plaintiff's severe impairments and compare them to the Commissioner's Listings.  (Pl.'s Br. 15-16.)  At step four, plaintiff asserts that the ALJ produced a residual functional capacity ("RFC") without any evidentiary explanation.  (Pl.'s Br. 16.)  Plaintiff asserts that she is not, in fact, capable of heavy work or simple repetitive tasks, as the ALJ concludes.  (Id.)  In a prior proceeding, the ALJ was told to have a psychiatric medical advisor, and plaintiff asserts that the ALJ ignored this.  (Id.)  Last, plaintiff contends that the ALJ ignored the vocational expert's evaluation of the claimant.  (Pl.'s Br. 17.)

F.      Analysis

1.      **Step two analysis: the ALJ did not correctly apply the *de minimis* standard at step two.**

To qualify for disability at step two, the applicant must have a severe impairment "which significantly limits [the claimant's] physical or mental ability to do basic work activities".[6]  20

---

[6] Regulation 20 CFR 404.1521 (b) defines basic work activities as "the abilities and aptitudes necessary to do most jobs" providing the following examples: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."

C.F.R. § 404.1520 (c).  A finding of severe impairment may be denied at this step only "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28 at 3.  The Social Security Regulations state that the severity requirement precludes impairments "which could never prevent a person from working."  SSR 85-28 at 2 (citing Baeder v. Heckler, 768 F.2d 547, 553 (3rd Cir. 1985)).

The Third Circuit has described the step two analysis as "a *de minimis* screening device to dispose of groundless claims."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (citing Smolen v. Chater, 80 F.3d 1273, 1290) (citation omitted).  "The burden placed on an applicant at step two is not an exacting one."  McCrea, 370 F.3d at 360.  "If the evidence presented by the claimant presents more than a 'slight abnormality', the step-two requirement of 'severe' is met, and the sequential evaluation process should continue.  Reasonable doubts on severity are to be resolved in favor of the claimant."  Newell 347 F.3d at 546-47, (citing Smolen, 80 F.3d at 1290). "[B]ecause step two is to be rarely utilized as basis for the denial of benefits . . . its invocation is certain to raise a judicial eyebrow."[7]  McCrea, 370 F.3d at 361, (citing SSR 85-28).

In the present case, the ALJ erred as a matter of law when he did not apply the correct *de minimis* legal standard in assessing the step-two requirement.  Though the ALJ provided explanations of his decision that claimant's neck and back problems were not severe impairments, the *de minimis* standard is neither mentioned nor does it appear to have been utilized.  Dr. Siddiqui, claimant's treating physician at the Innovative Pain Care Center,

---

[7] SSR 85-28 provides, "Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued."

16

concluded that plaintiff had difficulty in walking.  (Tr. 281.)  Under 20 CFR 404.1521(b)(1),

walking is a basic work activity that, if affected, would lead to a finding of severe impairment at

step two.  Inconsistencies, factual doubts, and vagueness in the severity of claimants'

impairments are set forth by the ALJ.  (Tr. 23-24.)  Under Third Circuit law, however, such

doubts must be resolved in favor of the claimant.

Defendants counter that plaintiff failed to report her back and neck problems in her

disability application and, therefore, these impairments cannot be considered severe.  (Def.'s Br.

5.)  The Commissioner, however, waived any right to make this argument when the ALJ

discussed these issues and ruled on them in his opinion.  The ALJ recognized those problems as

important enough to deserve discussion.

Next, defendants cite the proposition that if an ALJ erroneously concludes an impairment

is not severe at step two, "such error is harmless if the ALJ finds at least one other severe

impairment at step two."  (Def.'s Br.  6.)  This may or may not be true, depending on the

circumstances of the case.  In this case, it is not at all clear that the error was harmless.

Consideration of claimant's neck and back impairments in the present case may be material.  A

finding that plaintiff's neck and back impairments are severe would have led to a consideration

of these physical ailments in the following steps of the analysis.  The ALJ should have applied

the correct *de minimis* standard to determine whether or not these impairments were severe.

### 2.    Step three analysis: plaintiff did not establish an impairment that is equivalent to the Listings at step three.

Plaintiff asserts that the ALJ erred at step three in two ways.  First, plaintiff claims that

the ALJ failed to combine and compare plaintiff's impairments when considering the

Commissioner's listings.  (Pl.'s Br. 28.)  Second, plaintiff claims that there is not sufficient

justification for the ALJ's findings at this step.  (Id.)

As to plaintiff's first point, at step three, the ALJ must determine whether the claimant

has "an impairment or combination of impairments" equivalent to the Commissioner's listing.[8]

20 C.F.R. § 404.1594 (f)(2).  Plaintiff, however, still bears the burden of proof that her

impairments are medically equivalent.  Rutherford v. Barnhart, 399 F.3d 546, 551.  Plaintiff has

not explained how a combination of her impairments would be equivalent to the Listings, much

less persuaded that the medical evidence demonstrates this.  See Williams v. Barnhart, 87 Fed.

Appx. at 243 (denying remand on the grounds that "[claimant] argues that the ALJ should have

given greater consideration to the 'interrelationship' among her impairments, but she does not

explain how this consideration would have differed from the one provided.")  Furthermore, there

is evidence that the ALJ did consider plaintiff's impairments in combination, as he specifically

notes, "[t]he claimant does not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments."  (Tr. 24.)  Therefore, it cannot be concluded that

the ALJ did not take into consideration the combined effect of plaintiff's impairments, nor that

he erred in finding that plaintiff had not met her burden at step three.

Plaintiff's argument that there is not sufficient justification for the ALJ's findings at step

three is also unpersuasive.  In Burnett, the Third Circuit held that, in order to deny a disability

claim, "the ALJ shall fully develop the record and explain his findings at step three, including an

---

[8] The Commissioner provides, "[i]n determining whether your physical or mental impairments are of a sufficient
medical severity that such impairment or impairments could be the basis of eligibility under the law, we will
consider the combined effect of all your impairments without regard to whether any such impairment, if considered
separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the
combined impact of the impairments will be considered through the disability determination process.  If we do not
find that you have a medically severe combination of impairments, we will determine that you are not disabled." 20

analysis of whether and why [the claimant's] . . . impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments." 220 F.3d at 118. However, Jones v. Barnhart clarified that, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." 364 F.3d at 505 (citing Burnett, 220 F.3d at 120). The Jones court concluded that the ALJ sufficiently satisfied the Burnett requirement because "the ALJ's decision, read as a whole, illustrate[d] that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." Id.

In the present case, the ALJ considered relevant listings[9] and gave specific reasons why they were not the medical equivalent of the plaintiff's impairment. In determining that plaintiff had only moderate functional limitations, the ALJ cited to evidence in plaintiff's history as well as medical records, such as the consultative examination by Dr. Baharlias. (Tr. 24-25.) It is not necessary for the ALJ to specify in detail every requirement of each listing considered, as plaintiff suggests.[10] (Pl.'s Br. 28.) Instead, there is evidence that the ALJ considered the appropriate factors when reaching his conclusion, even citing that he specifically takes issue with the "c" requirements of the listings. (Tr. 25.) In the ALJ's opinion, the specific listings considered are noted, the claimant's history of impairments and present impairments are contemplated, and the relevant medical examinations are discussed. (Tr.24-25.) Therefore, the

---

C.F.R. 404.1523.

[9] Listings 12.04, 12.06, 12.08, and 12.09 were considered.

[10] Plaintiff states, "we do not learn of any of the requirements of the four Listings the ALJ apparently used for comparison". (Pl.'s Br. 28.)

ALJ gave "sufficient explanation to provide meaningful review of the step three determination." Williams v. Barnhart, 364 F.3d at 505.

      **3.**      **Step four analysis: the ALJ erred in determining the claimant's residual functional capacity ("RFC").**

At step four, plaintiff asserts that the "ALJ's RFC is not based on the substantial evidence of the record." (Pl.'s Br. 30.)  Plaintiff argues particularly that the dismissal of the ALJ's own expert was done in error.  (Pl.'s Br. 34.)  An ALJ is "responsible for reviewing the evidence and making findings of fact and conclusions of law."  20 C.F.R. § 416.927 (f)(2).  The ALJ is "not bound by any findings made by state agency medical or psychological consultants."  20 C.F.R. § 416.927 (f)(2)(i).  While the ALJ may weigh the evidence, however, he "cannot reject evidence for no reason or for the wrong reason."  Rutherford, 399 F.3d at 554; Plummer, 186 F.3d at 429; Mason v. Shalala, 994 F.2d 1058, 1066.  In the present case, the ALJ erred in discrediting his own expert's opinion, which materially affected his RFC determination of the claimant's ability to engage in simple repetitive tasks.  This court concludes that there is not substantial evidence in the record to support the ALJ's decision to reject his own expert's opinion.

Dr. Baharlias, the Commissioner's own medical examiner, found the "claimant may experience episodic psychotic moments with auditory or visual hallucinations, under stress with flashbacks." (Tr. 238.)  The ALJ took this expert opinion and made an unsupported medical judgment to discount it, stating, "it appears that this is due to taking too much medication."  (Tr. 27.)  He arrived at this conclusion by stating, "I note that the warning label for Klonopin states that hallucinations and psychotic episodes are a potential side effect of taking too much at one time." (Tr. 26.)  The ALJ is not free to make such medical determinations and cannot use his own medical judgment to discredit medical evidence regarding psychotic features.  Plummer,

186 F.3d at 429 (stating "[a]n ALJ may not make speculative inferences from medical reports. In addition, an ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence.")  See Rutherford, 399 F.3d at 554.  "The principle . . . is especially profound in a case involving a mental disability," as is the case here.  Morales v. Apfel, 225 F.3d 310, 319 (3d. Cir. 2000).

The ALJ erred further in determining the plaintiff's nonexertional limitations.  Dr. Baharlias also found that the claimant had a moderate to marked impairment to "respond appropriately to usual work situations and to changes in a routine work setting."  (Tr. 238.)  Mr. Meola, the vocational expert, stated that "an individual with a moderate to marked restriction in responding appropriately to usual work situations would be unable to work at any jobs."  (Tr. 28.)  These two pieces of evidence provide the basis for a finding of disability.  The consultative expert, Dr. Baharlias, found a moderate to marked limitation that the vocational expert concluded would mean that the claimant would not be able to work.  The ALJ, however, dismissed his own expert's opinion.  He states, "Dr. Barharlias' [sic] conclusion on this item of the evaluation appears to be based on the claimant's statements. In light of the claimant's lack of credibility, I find that Dr. Barharlias' [sic] opinion on this issue deserves lesser weight . . . .")  (Tr. 28.)

"State agency physicians and psychologists are considered to be 'highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Poulus v. Comm'r of Soc. Sec., 474 F.3d 88, 93 n.2 (3d. Cir. 2007) (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)).  The Court is "bound to the Commissioner's findings of fact if they are supported by substantial evidence in the record."  Morales, 225 F.3d at 316 (citing 42 U.S.C. § 405(g) (citation omitted)).   In the present case, the ALJ's determinations are not based on

substantial evidence.[11]  Rather, they are based on the ALJ's own opinions.  While the ALJ may engage in a credibility analysis of the claimant, this "credibility determination is not objective medical evidence and not an acceptable basis standing alone for rejecting an examining physician's conclusion." Id., at 318.  "The ALJ cannot, as he did here, disregard this medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." Id. at 17 (citing Kent v. Schweiker, 710 F.2d 110, 115 (3d. Cir. 1983)).

The ALJ states that Dr. Baharlias' opinion is entitled to lesser weight due to the claimant's credibility, yet fails to mention what evidence is being given greater weight.  In the absence of alternative medical determinations, the medical determination of Dr. Baharlias stands as the only medical evidence as to the RFC.  The ALJ's opinion fails to cite any alternative medical evidence that shows that the claimant does not have a moderate to marked impairment to respond appropriately to usual work situations and to changes in a routine work setting.  See Harris v. Astrue, No. 08-863, 2009 WL 189845 at *13 (W.D. Penn. Jan. 26, 2009) (awarding benefits and stating, "the record is devoid of a medical opinion that plaintiff is capable of performing work at a higher exertional level than that found by the consultative medical sources.")  While the ALJ was entitled to give lesser weight to Dr. Baharlias' opinion, based on his assessment of the claimant's credibility, he was not entitled to disregard it entirely in the absence of countervailing medical evidence.  The record does not contain substantial evidence to support the ALJ's conclusion regarding claimant's ability to respond appropriately to usual work situations and to changes in a routine work setting.

---

[11] "'Substantial evidence' is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Morales, 225 F.3d at 316.

The ALJ's error in discrediting Dr. Baharlias' opinion constitutes reversible error.  See Astrue, 2009 WL 189845 at *13 (concluding the "ALJ's reliance on his own interpretation of an x-ray report does not constitute substantial evidence, and therefore the ALJ's rejection of the consultative examiners' opinions on that basis constitutes reversible error").  In ignoring Dr. Baharlias' medical determination, in the absence of countervailing evidence, the ALJ erroneously calculated the claimant's ability to perform simple repetitive tasks in the determination of the RFC.  At step five, the RFC is plugged into the hypothetical posed to the vocational expert.  Mr. Meola, the vocational expert, testified that an individual with the restrictions Dr. Baharlias described would not be able to work.  This should result in a finding of disability at step five.

### 4. Appropriate remedy

The question remains whether this case should be remanded to the Commissioner for further development of the record or reversed with the instruction to award benefits.  "A district court, after reviewing the decision of the Secretary may, under 42 U.S.C § 405 (g) affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing."  Podedworny v. Harris, 745 F.2d 210, 221 (3d. Cir. 1984).  An award of benefits "should be made only when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits."  Morales, 225 F.3d at 320 (citing Podedworny, 745 F.2d at 223).  In the present case, this test has been met.

After two hearings before the ALJ, the record in this case has been fully developed.  (Tr. 11.)  The claimant filed for disability in 2004.  (Tr. 11.)  In Podedworny, the Third Circuit stated,

"an indigent claimant, who has already battled for seven years, [must not] wait with the patience of Job for yet another remand before he can collect the relatively modest amounts available through such an award[.]"  745 F.2d at 223 (quoting <u>Smith v. Califano</u>, 637 F.2d 968, 973 n.1 (3d Cir. 1981).  "Where further administrative proceedings would simply prolong appellant's waiting and delay his ultimate receipt of benefits, reversal is especially appropriate."  <u>Id.</u> (Citation omitted).  Like the claimant in <u>Podedworny,</u> who waited five and one-half years (<u>Id.</u>), the claimant in the present case has waited six years, due to no fault of her own.  The record has been sufficiently developed.  <u>Morales</u>, 225 F.3d at 320.  There is no reason to continue to delay the claimant's award when there is substantial evidence in the record that she is disabled.

The record contains substantial evidence that the claimant is disabled.  One of the Commissioner's experts has testified as to plaintiff's nonexertional limitations, with no countervailing evidence, and another expert has testified that a person with these characteristics can find no work in the national economy.  The legal requirements for the award of benefits under the Act have been met.  Plaintiff has met her burden of proof of disability at steps one through four, and the Commissioner has failed to meet his burden of proof at step five.  Because the evidence of record shows that Ms. Bantleon is disabled and entitled to disability benefits, the Court reverses the decision of the Commissioner.  Disability benefits will be awarded from the date of onset, March 2, 2004.

### III. CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's determination that Plaintiff is not disabled is clearly erroneous and not supported by substantial evidence.  The

Commissioner's decision is **REVERSED**.  The case is remanded to the Commissioner with the direction to award appellant the benefits to which she is entitled.


Dated: June 15, 2009

__  s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.
